# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VANCITO GUMBS | CRIMINAL INDICTMENT<br>NO. 1:16-CR-0145-21-TWT-JKL |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by Byung J. Pak, United States Attorney; Erin N. Spritzer and Ryan K. Buchanan, Assistant United States Attorneys for the Northern District of Georgia; Kim S. Dammers, Principal Deputy Chief of DOJ's Organized Crime and Gang Section; and Conor Mulroe, Trial Attorney for the Department of Justice, files this Sentencing Memorandum for Defendant Vancito Gumbs.

For the reasons that follow, the United States recommends that the Court impose a sentence of **240 months (20 years)** of imprisonment and the maximum available term of supervised release.

## FACTS OF THE OFFENSE

The United States adopts the facts proven at trial and those summarized in the Pre-Sentence Report [PSR], including but not limited to the following:

Position in the Enterprise: The defendant was a member of the Gangster Disciples while serving as an officer with the DeKalb County Police Department. During that time, Gumbs sent a text message to his girlfriend stating that he was "a gd hitman." Gov. Ex. 305-OA122. DeKalb County Police Department Sergeant Daniel Oak clarified that "gd" stands for Gangster Disciples. Trial 1 Transcript, 4/29, at 127.

Gumbs' membership in the Gangster Disciples was proven through the testimony of cooperating witnesses as well as documentary evidence. *See e.g.* Gov. Ex. 495-OA122 (photograph of the defendant making a gang sign with his hands); Trial 1 Transcript, 5/2, at 9 (Donte Starks). Additionally, Gangster Disciples member Quantavious Hurt identified the defendant in a photo lineup and indicated that he was a police officer and member of the Gangster Disciples. PSR ¶ 118; Trial 1 Transcript, 5/8, at 101-04 (TFO William Kimball Murdock).

Using his position as a police officer, the defendant provided sensitive law enforcement information to members of the Gangster Disciples. *See* Gov. Ex. 731; Gov. Ex. 733; Gov. Ex. 727. Sgt. Daniel Oak explained that the information

Gumbs provided on these wire intercepts could jeopardize officer safety or the integrity of an investigation. Trial 1 Transcript, 4/29, at 134-45.

Intercepted Calls Between Kevin Clayton and Vancito Gumbs: While employed as a police officer, Gumbs was intercepted on phone calls speaking with co-defendant Kevin Clayton, the Chief Enforcer of the Gangster Disciples in Georgia. Trial 1 Transcript, 4/15, at 144-45 (Buddy Early). On September 21, 2015, co-defendant Clayton spoke with Gumbs about the HATE Committee and explained that it falls within the structure and acts as "a low key cleanup crew." Gov. Ex. 728; PSR ¶ 100. On a separate call, the defendant told Clayton that he would try to get his territory as a police officer changed to be closer to the Gangster Disciples members. PSR ¶ 101. The defendant also agreed to sell a firearm to Clayton. Gov. Ex. 738.

The defendant passed along law enforcement information to the Gangster Disciples on wire intercepts. Gumbs warned Clayton not to go to G's Sports Bar on October 3, 2015, because the police were going to do a raid there. Gov. Ex. 706. On October 10, 2015, Clayton asked Gumbs to provide law enforcement information about a triple murder. Gov. Ex. 733. Gumbs advised that he would find out about the murders and call Clayton back. *Id.*

Failure to Withdraw: Gumbs never left the Gangster Disciples, renounced the group's activities, or otherwise withdrew from the racketeering conspiracy.

## GUIDELINES ISSUES

The defendant makes three objections to the PSR involving the Guidelines: (1) a 2-point enhancement for abusing a position of trust is not warranted; (2) the defendant should receive a 4-level downward adjustment for his role in the offense; and (3) the sentence enhancement for RICO Conspiracy involving murder is improper.

### I.   Position of Trust

In the PSR, the defendant received a 2-level enhancement pursuant to U.S.S.G. § 3B1.3 because he abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. The defendant maintains that he did not abuse a position of public trust, and that the 2-level enhancement is unwarranted.

The defendant was employed as a police officer with the DeKalb County Police Department while he was a member of the Gangster Disciples. As stated above, he provided sensitive law enforcement information to other Gangster Disciples members. Because of his conduct while serving as a police officer, this enhancement was properly applied.

### II.   Role Adjustment

The defendant asserts that he should receive the maximum 4-level downward adjustment under U.S.S.G. § 3B1.2(a) because his role in the offense

was minimal. There is no evidence that Gumbs was substantially less culpable than the average participant in the RICO Conspiracy. The defendant helped to further the conspiracy by providing law enforcement information to co-defendant Kevin Clayton, who was the Chief Enforcer of the Georgia Gangster Disciples. Accordingly, a mitigating role adjustment is unwarranted.

### III.    RICO Conspiracy Sentence Enhancement

In his objections to the PSR, the defendant contends that there was an improper procedural and factual basis for the murder enhancement and that his sentence for RICO Conspiracy is limited to 20 years' imprisonment because it is "impossible to tell" from the verdict form whether the jury found that his participation in the RICO Conspiracy involved murder (O.C.G.A § 16-5-1 ), which carries a potential life sentence, or merely attempt (O.C.G.A. § 16-4-1) or conspiracy (O.C.G.A. § 16-4-8) to commit murder, which carry maximum sentences less than life.[1] The defendant's argument misstates the character of the sentencing enhancement and ignores the unambiguous language of the verdict form. Additionally, the Court heard and rejected this same argument at multiple sentencing hearings in this case.

---

[1] Co-defendant Alonzo Walton made a substantially identical argument in his own PSR objections.

## A. BACKGROUND AND PROCEDURAL HISTORY

### 1. Indictment's Allegations Regarding Murder

Count One of the Second Superseding Indictment ["SSI"] makes reference to murder offenses in three places:

First, in the section captioned "The Racketeering Conspiracy," the indictment alleges that the defendant and others conspired to participate in the affairs of the enterprise through a pattern of racketeering activity "which consisted of multiple threats and acts involving: (a) murder, in violation of Official Code of Georgia, Sections 16-5-1; 16-4-1; and 16-4-8." SSI at 10. The indictment also alleges nine other types of racketeering activity. *Id.* at 10-11.

Second, in the section captioned "Manner and Means of the Conspiracy," the indictment alleges that "To perpetuate the enterprise and maintain and extend its power, members and associates of the enterprise committed and conspired to commit acts including murder, that is, causing the death of a human being unlawfully and with malice aforethought or causing the death of another human being, irrespective of malice, in the commission of a felony." SSI at 17. This language tracks the statutory elements of murder under Georgia law. The "Manner and Means" section further states that members and associates committed "attempted murder, that is, performing an act that constitutes a substantial step toward the commission of murder." SSI at 17.

Third, in a section captioned "Notice of Enhanced Sentencing," the indictment alleges that certain defendants, including Gumbs, "joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise engaged in acts involving murder, in violation of Official Code of Georgia 16-5-1." The Notice of Enhanced Sentencing does *not* cite the statutory code sections for attempt or conspiracy to commit murder.

Copies of the Second Superseding Indictment, with certain non-pertinent portions redacted, were provided to the jury during its deliberations. *See* Trial 1 transcript, 5/14, at 159-161.

2. Jury Instructions Regarding Murder

The Court's jury instructions also made reference to murder offenses. When defining the various offenses alleged to make up the pattern of racketeering activity, the court stated that "acts involving murder . . . includes murder, attempted murder, and/or conspiracy to murder." 5/14/19 Transcript at 115. The Court next defined the offense of murder under Georgia law, *see id.* at 115-16, and then separately defined the offense of conspiracy to commit murder, *see id.* at 116. The instructions did not define "attempted murder" as a separate offense. However, later in the Court's instructions regarding racketeering activity, after defining all the various types of racketeering activity, the court explained the law of attempt generally. *See id.* at 119.

Toward the end of the RICO Conspiracy instruction, the Court addressed the special sentencing factors by explaining:

> You will also need to decide specific questions about certain types of racketeering activity, namely, acts involving murder or drug trafficking. For these racketeering activity types, you must unanimously decide whether the Defendant joined or remained in the RICO conspiracy knowing that the enterprise engaged in this type of racketeering activity.

5/14/19 Transcript at 121.

3. <u>Verdict Form Question Regarding Murder</u>

The verdict form required a finding regarding murder. For each defendant charged in Count One, the verdict form asked first whether that defendant was guilty or not guilty of the offense of RICO Conspiracy generally, and next asked, "Did the RICO conspiracy involve murder?" *See* ECF 2450 at 1 (jury's completed verdict form for defendant Gumbs). The verdict form did not ask any question about attempted murder or conspiracy to murder, and did not use the phrase "acts involving murder."

4. <u>Objections and Argument Regarding Instructions and Verdict Form</u>

Gumbs and co-defendants filed written objections to the instructions and/or verdict form, but no defendant made the specific argument now before the Court regarding ambiguity of the jury's verdict. *See* ECF 2411 (Gumbs requesting that verdict form require finding of "conspiracy to murder" and

8

specify name of victim); ECF 2412 (co-defendant Walton requesting that verdict form require finding that defendant "committed or knowingly participated in" the murder of a specified victim at a specified place and time); ECF 2422 (co-defendant Glass objecting to the ordering of "guilty"/"not guilty" and "yes"/"no" choices).

At a charge conference on May 10, the Court queried the parties about each jury instruction in sequence and asked whether there were any remaining objections. The only objection relating to the court's instruction on sentencing factors came from the defendant, who requested that the phrase "enterprise engaged in" be changed to "enterprise *would* engage in." Trial 1 transcript, 5/10, at 41-43. The parties also discussed the Verdict Form, raising several issues not pertinent to this matter. *Id.* at 47-54. At that time counsel for Gumbs renewed his argument that the verdict form should "identify the victim or victims that [the] defendant to be enhanced is found to have been involved in the murder of." *Id.* at 54-55. The Court rejected that argument, agreeing with the Government that it was an "absolute misstatement of the law." *Id.* at 55.

Finally, after the charge conference and after closing arguments, but before the jury was charged, co-defendant Walton filed a written objection requesting that the following language be added to the instructions: "In order to find the special finding pertaining to murder, the Government must prove beyond a

9

reasonable doubt that the Defendants joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise engaged in acts involving murder." ECF 2428 at 1. The Court declined to modify its existing language regarding the special finding, explaining:

> We discussed this at length, I think, the very first week of the trial. [The Government] submitted a proposed supplemental charge. Nobody objected to that. I incorporated it into my charge on page 20, and nobody objected to that. . . . I'm going to leave it the way it is.

Trial 1 transcript, 5/14, at 98-99.

### B. ANALYSIS

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). One such fact in this case is what type of racketeering activity the defendant's offense was "based on." If the RICO Conspiracy conviction was "based on" any predicate offense carrying a possible life sentence, the defendant's maximum penalty is life; otherwise, it is twenty years. *See* 18 U.S.C. § 1963(a); *see also United States v. Nguyen*, 255 F.3d 1335, 1343 (11th Cir. 2001) (applying *Apprendi* to § 1963(a)). The crime of murder under Georgia law carries a possible sentence of life imprisonment. *See* O.C.G.A. § 16-5-1.

The defendant now argues that he is not eligible for a life sentence on the RICO Conspiracy count because, he says, the jury's special sentencing finding might have been based on attempted murder or conspiracy to murder, rather than actual murder. This argument should be rejected for both procedural and substantive reasons.

1. <u>The Defendant's Argument was Forfeited</u>

To begin, it bears noting that the defendants never objected on this basis to the Court's jury instructions or verdict form at any time prior to the guilty verdicts. The defendant's belated argument should therefore be considered under the plain-error standard. *See* Fed. R. Crim. Pro. 52; *see also United States v. Asher*, No. 1:09-CR-414-WSD, 2012 WL 13106304, at *31-32 (N.D. Ga. Oct. 17, 2012) (Duffey, J.), *aff'd*, 564 F. App'x 963 (11th Cir. 2014) (district court applying plain-error review on Rule 33 motion for new trial based on unobjected-to evidence). If the defendants believed that there was fault with the Court's instructions and verdict form, then the time to raise those concerns was before the jury was charged, when there was still opportunity to examine the supposed defect and repair it if necessary. *United States v. Stout*, 667 F.2d 1347, 1354 (11th Cir. 1982) (explaining Rule 52's purpose to "promote efficient judicial administration and to prevent parties from gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by

11

objection at trial"); *United States v. Vasen*, 222 F.2d 3, 5 (7th Cir. 1955) ("[C]ommon fairness requires that before it can be successfully contended [on subsequent review] that the trial court has erred, that court must have been given an opportunity to rectify any inadvertent comment, ruling or instruction.").

Moreover, beyond simply forfeiting the objection, co-defendant Walton proactively invited the purported ambiguity when he requested a jury charge permitting a "special finding pertaining to murder" on the basis of the defendant's "knowing and agreeing that members of the enterprise engaged in *acts involving* murder," ECF 2428 at 1 (emphasis added). *Cf. United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) ("Where a party expressly accepts a jury instruction, 'such action constitutes invited error' and 'serve[s] to waive [his] right to challenge the accepted instruction on appeal.'" (quoting *United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005)).

2. <u>The Jury Found the Defendant Accountable for Actual Murder</u>

On the merits, the defendant's argument fails because the verdict form specifically asked the jury to decide whether "the RICO conspiracy involved *murder*," and made no mention of attempt or conspiracy. *See* ECF 2450 at 1 (emphasis added).

As the Eleventh Circuit has explained, a "verdict form must be considered in the context of the jury instructions as a whole." *United States v. O'Neal*, 362

F.3d 1310, 1314 (11th Cir. 2004). In this case, the context of the court's other instructions confirms that the jury understood the definition of the terms on the verdict form when it found that "the RICO conspiracy involved murder." When defining the various types of racketeering activity, the court plainly distinguished "murder" from "conspiracy to murder," and defined each by name. There was accordingly no ambiguity when the verdict form specified the former offense to the exclusion of the latter.

Just like the verdict form, the operative language of the indictment also limited the jury's consideration to actual murder. Although the pattern of racketeering activity for the overall RICO Conspiracy was alleged to include violations of O.C.G.A. §§ 16-5-1 (murder); 16-4-1 (attempt); and 16-4-8 (conspiracy); the Notice of Enhanced Sentencing against particular defendants was based *solely* on § 16-5-1, and not §§ 16-4-1 or 16-4-8. *See* SSI at 43.

Common sense fortifies this straightforward reading of the verdict form and sentencing notice. Because this is a RICO Conspiracy case charged under 18 U.S.C. § 1962(d), as opposed to "substantive RICO" under § 1962(c), the heart of the offense is the defendant's *agreement* that the members of the enterprise, including himself, *would* engage in the specified types of racketeering activities. The defendant's argument here asks the Court to imagine the jury found that the defendant agreed that members would try to commit murders, and/or agreed

that members would conspire to murder, but did *not* agree that the enterprise would ever succeed in those efforts by accomplishing a murder. This is incoherent: "[I]t would be the height of absurdity to conspire to commit an attempt, an inchoate offense, and simultaneously conspire to fail at the effort." *United States v. Meacham*, 626 F.2d 503, 509 (5th Cir. 1980).

The evidence produced at trial included the testimonies of Gangster Disciples members describing the rules and framework of the organization. As exemplified in Keith McCain's testimony, the cardinal rule of the gang is the oath of "silence and secrecy." Trial Transcript 1, 4/17, at 239-41. As a member of the Gangster Disciples, Gumbs knew that a violation of this oath would be punishable by death. *Id.* at 241. With this knowledge, in addition to his awareness of the HATE committee operating as a deadly "cleanup crew," Gumbs was aware of the murderous activities of the gang yet remained involved in the conspiracy. Gov. Ex. 728; PSR ¶ 100.

Indeed, the evidence at trial showed not only that the defendant agreed that members of the enterprise would engage in murder, but that he was "a gd hitman" and that he "killed in the streets."[2] Gov. Ex. 305-OA122. There is accordingly no serious question that the jury properly found that the defendant

---

[2] These text messages were included in the evidence evaluated by the jury at trial.

took part in a RICO Conspiracy involving murder, qualifying him for a life sentence under 18 U.S.C. § 1963(a).

The defendant contends that he is ineligible for the murder enhancement due to the lack of specific evidence tying him to the murders presented in this case. However, the Eleventh Circuit does not require proof of direct involvement in the predicate acts for conviction of a RICO conspiracy charge. *United States v. Carter,* 721 F.2d 1514, 1530-31 (11th Cir. 1986). Evidence of the defendant's agreement in the commission of the acts is enough to demonstrate involvement in the underlying racketeering activity, even if he does not personally commit the acts. *Id.* Here, Gumbs' active membership in the gang evidences his agreement to the commission of racketeering activities, which was evaluated by the jury while considering the murder enhancement.

The defendant invokes the rule of lenity, but that canon of statutory construction is inapplicable here. The rule of lenity is used to interpret *statutes*, and the defendant has cited no case applying the rule of lenity to a purportedly ambiguous jury verdict. *See Moskal v. United States*, 498 U.S. 103, 107 (1990) ("We have repeatedly emphasized that the touchstone of the rule of lenity is *statutory ambiguity*.") (internal quotation marks omitted; emphasis added). Moreover, because the verdict form was not ambiguous, there is no ambiguity to resolve.

The Court should therefore reject the defendant's argument and find that Guidelines are life.

## SENTENCING RECOMMENDATION

With the Guidelines correctly calculated at life imprisonment, the government recommends a sentence of 240 months, representing a downward variance (effectively a decrease of 5-6 offense levels). This reduction is necessary to ensure that the sentences imposed in this case properly reflect the relative culpability of all co-defendants, including other more culpable co-defendants for whom the government will request life imprisonment.

Gumbs did not occupy a high position in the organization's hierarchy. He was an enthusiastic participant in the Gangster Disciples, but it was other, more senior members who established the culture of violence and taught it to young recruits.

Nonetheless, a lengthy prison sentence is necessary to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from further crimes by this defendant. *See* 18 U.S.C. § 3553(a). The defendant committed acts that were abhorrent and deceitful, while demonstrating brazen disregard for his sworn duty to the public. His abuse of power compromised investigations and endangered the lives of other officers, agents, and civilians. This defendant and others must be deterred not only from committing similar

abusive acts in the future but also from associating with gangs like the Gangster Disciples that glorify violence and corruption.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence the defendant to **240 months (20 years)** of imprisonment and the maximum available term of supervised release.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/KIM S. DAMMERS
*DOJ Principal Deputy Chief Organized Crime and Gang Section*
Georgia Bar No. 425317
Kim.Dammers@usdoj.gov


/s/   RYAN K. BUCHANAN
*Assistant United States Attorney*
Georgia Bar No. 623388
Ryan.Buchanan@usdoj.gov

/s/   ERIN N. SPRITZER
*Assistant United States Attorney*
Georgia Bar No. 152374
Erin.Spritzer@usdoj.gov

/s/   CONOR MULROE
*Department of Justice*
*Trial Attorney*
New York Bar
Conor.Mulroe@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

November 12, 2020

/s/ *Erin N. Spritzer*

Erin N. Spritzer

*Assistant United States Attorney*