### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL CASE NO.** |
| | ) | **1:16-CR-145(21)-TKL-TWT** |
| **VANCITO GUMBS,** *et al.*, | ) | |
| **Defendants** | ) | |
| _____ | ) | |

### SENTENCING MEMORANDUM OF VANCITO GUMBS

COMES NOW Defendant Vancito Gumbs and submits this, his Sentencing Memorandum.

## I.   <u>BACKGROUND AND SUMMARY</u>

Mr. Gumbs was not charged with any of the substantive crime in this case. There was no evidence or even any allegation at trial that he was involved in any of those crimes (nor that he ever had any contact or knowledge or involvement with any co-defendant except for Kevin Clayton). Least of all was there any allegation or evidence of any involvement by Mr. Gumbs in any murder in this case.

Mr. Gumbs was charged in and convicted on only Count1 in this case – general RICO conspiracy under 18 U.S.C. 1962(d)). That Count charged that Mr. Gumbs and others did "knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with one another to violate Title 18, United States Code,

Section 1962(c)." Mr. Gumbs never was charged with any specific substantive offense in this case—certainly not with any murder or attempted murder. The only specific substantive allegations in the indictments explicitly pertaining to Mr. Gumbs are most consistent with the substantive offense of obstruction of justice, treated at Chapter 37 of Title 18:

- that on or about October 1, 2015 he told co-defendant Kevin Clayton what the nature of the event was (or more accurately, was not) that the DeKalb Police Department was investigating at a particular location (Second Superseding Indictment ¶ 130);

- that also on or about October 3, 2015 he warned Clayton to stay away from a sports bar that the DeKalb Police were raiding (*id.* ¶ 131); and

- that also on or about October 3, 2015, Clayton asked Gumbs to bring him a gun (*id.* ¶ 132) (not that he did give Clayton the gun nor that Clayton was a "prohibited person" from possession such a gun).

Not only was Mr. Gumbs never charged with any specific offense in the case., also, for almost the entirety of this case, the Government did not include Mr. Gumbs in the "enhanced sentencing" portion of the indictment. It did not do so in the original indictment (29 April 2016); and even as late as a year-and-a-half later (26 September 2018) in the first superseding indictment, it still did not do so. Only in the final superseding indictment, entered still later, on 24 October 2018

(paragraph 136 thereof) was Mr. Gumbs added to the murder-enhancement category. That was done only after negotiations had failed to produce a mutually acceptable resolution of the case as to him.

At trial, the undersigned counsel timely objected both to the Court's proposed jury instructions and to the Court's proposed verdict form, including for their failure to require the jury to make specific determinations for any findings that would result in a murder-related verdict or punishment for Mr. Gumbs. Unlike the other defendants in Trial Group 1,[1] Mr. Gumbs, as the Government acknowledges, submitted proposed instructions and a proposed verdict form that would have required such specificity from the jury in its deliberations and verdicts, as is required by Eleventh Circuit precedent. The requested instructions and verdict form for Mr. Gumbs would have avoided the problem of the inherent vagueness of the verdicts under Georgia law for the failure of the verdicts to specify which of the varieties of murder under Georgia law (with different sentencing consequences) the jury found to have been involved with any particular defendant's conduct.

The jury found Mr. Gumbs guilty of Count 1, RICO conspiracy, and additionally found, on the verdict form provided by the Court, that the RICO

---

[1]    For this reason the Court's rejection at sentencing of arguments by other Trial Group 1 defendants on this basis are not applicable to Mr. Gumbs, who did timely propose instructions and verdict forms that would have avoided the problems now again complained of in these respects.

conspiracy involved murder (generically, without any specificity. In these circumstances, it would be legally impermissible to sentence Mr. Gumbs pursuant to a murder enhancement based on 18 U.S.C. § 1963(a) ("murder enhancement"). (Separate from those considerations, it also would be legally impermissible to sentence Mr. Gumbs to more than the 20-years cap provided for by Georgia law in this case.) Instead, the only appropriate basis for sentencing Mr. Gumbs based on the verdict in this case is under U.S.S.G. § 2E1.1(a), the section applicable to RICO conspiracy generally, without an enhancement.  For someone like Mr. Gumbs with no criminal history, that section would produce a Guidelines range of 30 – 37 months.

### A. TRIAL ALLEGATIONS AND EVIDENCE AS TO MR. GUMBS.

The following circumstances of this trial as to Mr. Gumbs are especially pertinent in the determination by this Court of a reasonable sentence for Mr. Gumbs under 28 U.S.C. § 3553(a).

<u>No Evidence or Allegation of Involvement, in Any Charged Murder or Violence</u>

- Mr. Gumbs had no involvement with any murder or attempted murder or assault or other violence of any kind involved in this case.

- **The LATEST murder involved in this case (or Robert Dixon on 3 August 2015) occurred well PRIOR to the EASRLIEST involvement of Mr. Gumbs of any kind in the case as shown by any evidence**

4

**presented by the Government at trial (the first intercepted telephone calls between Mr. Gumbs and Kevin Clayton from 2 September 2015).**

• None of the intercepted communications between Mr. Gumbs and Clayton pertained in any way to any murder or violence or any other specific crime charged in this case.  The Government alleged nothing to the contrary.

• No evidence was presented at trial of any involvement by Mr. Gumbs in any murder, attempted murder, or other violence involved in this case.

• The Government never has even alleged that Mr. Gumbs was involved in any murder involved in this case.

• The Government never charged Mr. Gumbs -- not in any of the three indictments in this case -- with involvement in any of the specific murders or violence involved in this case.

## No Involvement With Any Co-Defendant But Clayton

• The sole involvement of Mr. Gumbs with *any* co-defendant in this case was his interactions with Kevin Clayton.  There was **no evidence in this case of any other contact of any kind by Mr. Gumbs with any other defendant in this case.**

- **No conduct of Mr. Gumbs identified in the Indictment or at trial involving Mr. Clayton had any connection with any murder or any other specific crime involved in this case.**

- There is no evidence of any contact between Mr. Gumbs and Mr. Clayton (much less any conspiracy, and certainly any murder-related conspiracy) before or even at the time of any murder involved in this case.

**Evidence Showed Lack of Familiarity With "Hate Committee"**

- One of the early intercepted telephone calls between Mr. Gumbs and Clayton introduced by the Government at trial (the call of 21 September 2015) clearly showed that Mr. Gumbs had no idea what the "Hate Committee" was, which played so large a role in Trial Group 1.  In that call, Mr. Gumbs discussed with Clayton some arrests that were then occurring in DeKalb County, including of Quantavious Hurt, a chief Government witness in this case. Discussing news reports about the arrests that he had read on his computer, Mr. Gumbs stated as follows (when unaware that anyone else was listening than Clayton):

  *Yeah, man, I just looked it up on my tablet. I seen it. They call it-- they say they call themselves the Hate Committee.*
  \* \* \*
  *Hate Committee? It doesn't sound like something we're affiliated with at all.*

**No Prior Conviction**

- Mr. Gumbs has never been convicted of any crime of any kind prior to this case.

## II.  APPLICABLE STATUTES AND SENTENCING GUIDELINES

Without the "murder enhancement" the applicable U.S. Sentencing Guidelines provision to Mr. Gumbs for the RICO conspiracy conviction would be, ***at the most***, Level 19.  USSG § 2E1.1(a).  With his Criminal History Category of I, this would produce a sentence range of **30 to 37 months**.[2]  In fact, even under the specific allegations of the Government itself, in the Indictment, regarding the conduct of Mr. Gumbs, that conduct is most accurately categorized as "obstruction" (during and perhaps after his service as a police officer) covered by 18 U.S.C. §1505, for which the **statutory maximum punishment is 5 years** imprisonment. The USSG section applicable to section 1505 is USSG §2J1.2, which prescribes an offense level of 14.  For Mr. Gumbs, in Criminal History Category I, this produces a sentencing range of **15 - 21 months**.  Again, in the RICO context, as noted in fn 1, the offense level of 19 would be used because it is greater than this level for the underlying activity.

## III.  ARGUMENT

### A. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE MURDER ENHANCEMENT AS TO MR. GUMBS.

---

[2]    Section 2E1.1(a) specifies "the greater [of] [level] 19 or the offense level applicable to the underlying racketeering activity."

There was no evidence in this case linking Mr. Gumbs with any murder, or attempted murder or other violence even.  In fact, as is shown *supra,* the ***latest*** murder involved in this case preceded in time the ***earliest*** evidence of any involvement by Mr. Gumbs in the alleged racketeering conspiracy in this case (the earliest date of his intercepted telephone calls with Mr. Clayton).  It is not that such evidence was insufficient to support a conviction specifying the murder enhancement; it is that such evidence was non-existent.  Thus it is an ***evidentiary impossibility*** under the evidence submitted by the Government at trial for Mr. Gumbs to have any involvement with or any criminal responsibility for any murder involved in this case, all of which pre-dated the earliest evidence of his alleged involvement in any alleged conspiracy here.

For this reason, application of the murder enhancement in sentencing Mr. Gumbs is improper as unsupported not only by sufficient evidence but by any evidence or logic at all, As the Government notes in its Sentencing Memorandum, the undersigned so argued to the Court post-verdict in arguing that the verdict should be set aside, at least to the extent of the "involving murder" finding on the verdict form.  The Court denied the motion of the undersigned at that time. However, Mr. Gumbs now reasserts that evidentiary lack as a basis for urging the Court to determine that a reasonable sentence for him in the present case is one

determined under the general RICO Sentencing Guidelines discussed above, rather than by application of the murder enhancement.

## B. THE JURY INSTRUCTIONS AND VERDICT FORM ARE INADEQUATE TO SUPPORT A MURDER ENHANCEMENT

Not only does the government seek application of the murder enhancement to Mr. Gumbs based, necessarily, solely on murders that occurred prior to the earliest evidence of even any potential involvement of him in any Gangster Disciples conspiracy; the Government also seeks that application based on a jury verdict form, and underlying jury instructions, that fails to specify any particular murder, of those several involved in this general-purpose conspiracy case, which Mr. Gumbs was determined beyond a reasonable doubt to have been criminally responsible for. Application of the enhancement in this circumstance is foreclosed by binding Eleventh Circuit precedent. Indeed, it would mark an unprecedented expansion of murder-based RICO criminal responsibility and punishment in the Eleventh Circuit.

Under that precedent, in order to apply substantive-offence-based enhanced sentencing to a defendant based solely on a multi-object-conspiracy charge, it is a necessary prerequisite that the appropriate fact-finder (here the jury) make factual findings sufficient to find the defendant guilty of that relevant substantive offense.

Count 1 of the Second Superseding Indictment alleges a multi-object conspiracy. Sentencing under it would be determined by the interplay between

sections 2X1.1(a) and 1B1.2(d) of the Sentencing Guidelines.  "Generally, in sentencing a defendant on a conspiracy count, a court sets the defendant's base offense level by using the offense level of the underlying substantive offense that was the object of the conspiracy. See U.S.S.G. § 2X1.1(a)."  United States v. Hernandez, 141 F.3d 1042, 1051 (11th Cir. 1998).  Because a multi-object conspiracy involves more than one underlying substantive offense, however, "the general rule of § 2X1.1(a) requires refinement . . . The refinement the Sentencing Guidelines make in multi-object conspiracy cases is to treat the defendant as if he 'had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."  Id. (quoting U.S.S.G. § 1B1.2(d)).

The following well-settled principles of law in the Eleventh Circuit apply regarding the application of § 1B1.2(d):

- "Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself."  United States v. Ross, 131 F.3d 970, 980-81 (11th Cir. 1997);

- "[W]here a count charges a conspiracy to commit more than one offense, the district court must find beyond a reasonable doubt that the defendant conspired to commit that particular offense conduct in order to apply the

corresponding offense level as found in the Sentencing Guidelines.

United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir. 2002);

- "Where the conspiracy has multiple criminal objects, the conviction 'shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.' U.S.S.G. § 1B1.2(d). Where the verdict does not establish which offenses were the object of the conspiracy, the Sentencing Guidelines caution that 'subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.' U.S.S.G. § 1B1.2(d), cmt. n.4. The Eleventh Circuit has construed this to mean that 'the court must find beyond a reasonable doubt that the defendant conspired to commit the particular object offense.'" United States v. Colbert, 2013 U.S. Dist. LEXIS 102774, at *7-8 (M.D. Fla. July 23, 2013).

Under controlling Eleventh Circuit law, Mr. Gumbs could be sentenced under the enhanced-sentencing statute only if a trier of fact found, beyond a reasonable doubt, that he committed or conspired to commit *that offense*. The Government produced no such evidence at trial. Indeed, it would be reversible error to enhance Mr. Gumbs's offense level from 19 to a higher level without such

a finding.  *See e.g.*, <u>United States v. Bradley</u>, 644 F.3d 1213, 1300-01 (11th Cir.

2011) (vacating sentence because court failed to identify beyond a reasonable

doubt the object offense that drove the conviction"); <u>United States v. Farese</u>, 248

F.3d 1056, 1061 (11th Cir. 2001) (vacating the defendants' sentences holding that

the district court erred in applying a preponderance of the evidence standard, rather

than finding that the defendants **conspired to commit money laundering** beyond

a reasonable doubt.).

The Court's opinion in <u>Farese</u> provides clear guidance.  In that case the

defendant was charged in a multi-object conspiracy, including money laundering,

obstruction of justice, and mail fraud as alleged underlying substantive offenses or

objects.  Prior to the defendant's guilty plea, he filed a motion arguing that he did

not commit the crime of money laundering.  The magistrate judge recommended

that his motion be denied, but the district court never ruled on the motion.  After

the magistrate's recommendation, the defendant pled guilty to Count I of the

indictment.  In his plea agreement, however, the defendant reserved the right to

contest at sentencing the issues that he raised in his early motion challenging

application of the object offense for money laundering.  248 F.3d at 1058.

At sentencing, the district court sentenced defendant under the money

laundering guideline, finding that the government had established that, but only by

a preponderance of the evidence. 248 F.3d at 1509. The Court of Appeals vacated

the sentence. The Court's rationale was as follows:

> The appellants' guilty pleas do not establish whether money laundering or mail fraud was the object of the racketeering conspiracy because, although they pleaded guilty to Count I of the indictment insofar as it charged them with those object offenses, Farese expressly reserved the right to contest at sentencing the issue of whether he committed the crime of money laundering, and preserved that issue for appeal. And the district court permitted DeRosa to ride along on that same reservation. As a result, U.S.S.G. § 1B1.2(d), as interpreted in our *Ross* decision, means the district court could find that the object of the racketeering conspiracy was money laundering, and sentence the appellants under the money laundering guideline, **only if it was convinced beyond a reasonable doubt that they committed** *that offense* . . . The district court applied a preponderance of the evidence standard, and that was error.

248 F.3d at 1061 (emphasis added).

The rule for the present case from all of these opinions is that in order for a

defendant charged in a multi-object conspiracy to subjected to enhanced

punishment based on a particular underlying substantive offense, there must be a

determination by the finder of fact that the evidence is sufficient beyond a

reasonable doubt to prove that the defendant committed that particular offense in

the circumstances of that case. There was no such determination or specification

by the jury in this case, not only because of the evidentiary impossibility discussed

above, but particularly because of that combined with, multiplied by, the failure of

the verdict form and underlying jury instructions to require such a specification

13

and finding by the jury.  This is a separate and distinct basis rendering application of the murder enhancement to Mr. Gumbs reversible error under  the Eleventh Circuit precedent discussed above.

### C. THE 20-YEAR CAP EFFECTED BY GEORGIA MURDER LAW APPLIES TO MR. GUMBS; AND THE <u>10-YEAR CAP</u> FOR MURDER CONSPIRACY SHOULD INFORM THIS COURT'S DETERMINATION OF SENTENCE FOR MR. GUMBS.

Post-verdict at trial, Mr. Gumbs joined the other Trial Group 1 defendants in arguing that the sentencing caps provided under Georgia homicide law apply in this case.  Mr. Gumbs reasserts that argument here.  While the Court has rejected these Georgia-law-based arguments in previous sentencing proceedings for Trial Group 1 defendants, Mr. Gumbs urges that he is differently situated in this respect from those other defendants in the aforementioned circumstances (unique to him among all those defendants sought to be subjected to enhanced sentencing) that there was no evidence at trial of any involvement by Mr. Gumbs in any actual murder involved in this case.  Therefore, unlike with those other defendants for which there was such evidence at trial, with respect to Mr. Gumbs (a) the inherent ambiguity of the murder-involved verdicts in this case ***does*** inevitably infect the "involved murder" portion of the verdict form as to him and (b) that ambiguity is impossible to resolve by post-verdict surmises about what the jury might have had in mind as to him in this respect.  This is true *a fortiori* because of the additional

fact that the latest of the actual murders specifically involved and charged in this case pre-dated the earliest alleged evidence of alleged involvement by Mr. Gumbs in the alleged Gangster Disciples conspiracies in this case.

### Basis for the Caps

No sentence greater than 20 years is permissible for Mr. Gumbs in this case, based on the structure and application of Georgia homicide law, and the interaction of that with federal sentencing rules and policy, including the rule of lenity. The indictments in this case define murder in a manner that invited ambiguity. The Due Process clause of the Fifth and Fourteenth Amendments, along with the notice and jury trial guarantees of the Sixth Amendment, require any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. United States v. Apprendi, 530 U.S. at 476 citing Jones v. United States, 526 U.S. 227 (1999). A violation of the Racketeering statute carries a twenty-year maximum unless the racketeering activity has a maximum penalty of life. 18 U.S.C. 1963(a). Here the jury found murder was a racketeering activity. However, the question is whether murder, as defined to the jury, carried a life sentence as a penalty.

The indictment, the jury instructions, and the PSR all define murder the same way: a violation of either O.C.G.A. §16-5-1 (murder statute), O.C.G.A. §16-4-1 (attempted murder) or O.C.G.A. §16-4-8 (conspiracy to murder).

O.C.G.A. §16-5-1 is the Georgia law that makes murder illegal. The maximum penalty for a violation of §16-5-1 is death. O.C.G.A. §15-4-1 is the Georgia law that makes attempted murder illegal. The maximum penalty for a violation of §15-4-1 is thirty years. O.C.G.A. §16-4-6(a). O.C.G.A. §16-4-8 is the Georgia law that makes it illegal to conspire to murder. The maximum penalty for conspiracy to murder is ten years. *Id*.

Because the jury was given three ways in which they could find the conspiracy involved murder, when it returned a verdict that indicated murder was involved in the conspiracy, it was ambiguous because it is impossible to tell which one of three ways the jury found murder was in the conspiracy. The jury may have only found Mr. Gumbs was responsible for conspiracy to murder in violation of O.C.G.A. §16-4-8.[3] The ten year maximum sentence under §16-4-8 would not be sufficient to invoke a life sentence under 18 U.S.C. §1963(a). Because conspiracy to murder was among the ways the jury could find the "racketeering activity of murder" took place, the jury's verdict is necessarily ambiguous concerning the requirements of 18 U.S.C. 1963(a).

---

[3]    As states above, no one has alleged (and the jury certainly did not find) that Mr. Gumbs was killed anyone, attempted to kill anyone, or was otherwise was involved in any murder involved in this case (indeed, not in any murder at all). As such, it's exceedingly likely that the only way Mr. Gumbs could be held responsible for the racketeering activity of murder is under the conspiracy- murder statute.

Normally when a jury verdict is ambiguous, the District Court can decide by a preponderance of evidence which conduct the Defendants were responsible for. However, in the situation of this case, Apprendi governs, because it determined a District Court Judge is not allowed to make ruling on a factor which raises the penalty for a RICO violation over the twenty-year cap. Apprendi v. New Jersey, 530 U.S. 466 (2000). Consequently, the inclusion of the O.C.G.A.§ 16-4-8 definition of murder created an ambiguous jury verdict and Apprendi prohibits the District Court from making a factual finding that would raise the cap over twenty years.

The government should not have defined murder so broadly that it allowed a crime with a ten-year sentence to meet the definition of murder. Doing so undermined the purpose of 1963(a), with requires the jury to find the Defendant committed a crime that carries a life sentence, not a ten year sentence. Because Mr. Gumbs is only charged in Count-1, the maximum sentence the Court could impose on him in this case is twenty years. This is particularly so regarding Mr. Gumbs because he was not even alleged to have been involved in any murder involved in this case (and all of them occurred before the first evidence of his alleged involvement in the relevant conspiracy, so that, logically, the worst of the murder variations that he could be found guilty of under Georgia law is the lowest of them sentence-wise: murder conspiracy. Therefore the life-sentence provision

17

of the federal statute is not invoked, and therefore the maximum sentence that could be applicable to  Mr. Gumbs is 20 years.

*In fact, if Mr. Gumbs's conviction were construed under Georgia law, the ten-year cap of O.C.G.A. §16-4-8 for murder conspiracy would be applicable to him*.  Mr. Gumbs urges the Court that this consideration too should strongly inform the Court's determination of what is a reasonable sentence for Mr. Gumbs pursuant to 18 U.S.C. § 3553(a).  *It would be extremely anomalous and unfair to sentence him to any term of imprisonment exceeding the maximum for murder conspiracy under Georgia law when, again, there was not even any evidence or allegation (or jury finding)in this case that he was involved even on a conspiracy level in any murder involved in this case.*

### D. THE MAXIMUM MINOR-ROLE REDUCTION SHOULD APPLY FOR MR. GUMBS.

All the circumstances described above (there being no evidence nor even any allegation of the commission of or even involvement in by Mr. Gumbs of any of the underlying substantive offences in this case) *ipso facto* supports the applicability to Mr. Gumbs of the maximum, 4-level, minor-role reduction provided for by U.S.S.G. § 3B1.2(a) for a "minimal participant". That is the absolute most that Mr. Gumbs could be said to have been in the criminal activity involved in this case.

18

## E.  THE "POSITION OF TRUST" ENHANCEMENT IS NOT APPLICABLE.

Even accepting *arguendo* the allegations of the Government in the indictment regarding the alleged involvement by Mr. Gumbs with Kevin Clayton in this case for the very short portion of the overall conspiracy alleged in this case when Mr. Gumbs was still a police officer (he resigned from the force very early on) that alleged involvement was not even argued (much less proved) by the Government to have materially aided any substantive crime involved in this case. Therefore, there is not a sufficient basis for application to Mr. Gumbs of the "position of trust" enhancement under U.S.S.G. § 3B1.4.

## F.  A DOWNWARD VARIANCE IS REQUIRED BASED ON THE CONDITIONS OF MR. GUMBS'S RECENT CONFINEMENT.

Over a year ago Mr. Gumbs was transferred from the Robert A. Deyton Pretrial Detention Center to the United States Penitentiary, Atlanta, where he has been confined ever since.  In the best of times the US Pen (especially the pretrial detention part of it) is a vastly more meager,  austere, and grim housing location relative to the Deyton Detention Center which is designed to appropriately accommodate persons pre-trial and pre-sentence. That US Pen pretrial section is even (far) more so these things even than the permanent housing portion of other longer-term B.O.P. facilities.  But all this has been greatly magnified by the fact that for a substantial part of Mr. Gumbs's times at the grim pretrial part of USP

Atlanta, that facility has been wracked by the Covid.  These circumstances provide

a strong additional basis for a reduction (by variance and/or departure of any

sentence to be imposed on Mr. Gumbs.

### IV.    CONCLUSION AND SENTNECING REQUEST

For all these reasons, the undersigned urges that justice and fairness require

a non-Guidelines sentence for Mr. Gumbs in the unique circumstances of his

involvement in this case.  At the least the undersigned urges that a substantial

downward departure is justified in order to produce the required result of a

sentence that is reasonable in these circumstances under section 3553(a).  The

undersigned requests that the Court impose a sentence of **37 months** of

imprisonment, consistent with the application of the standard RICO conspiracy

guideline in U.S.S.G. § 2E1.1(a), as discussed in section II. above, but that in any

event the Cour**t not sentence Mr. Gumbs to no more than 120 months (10**

**years)** imprisonment, with reference to the Georgia murder conspiracy statute as

discussed in section III. C. above.

RESPECTFULLY SUBMITTED this 13th day of November 2020.

THE ROGER C. WILSON LAW FRM, PC

/s/ Roger C. Wilson
Roger C. Wilson
Georgia Bar No. 769040
Attorney for Vancito Gumbs

20

1100 Peachtree Street, Suite 200
Atlanta, GA 30309
Telephone:  404- 870-3566
Email:  rcw@rogerwilsonlaw.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that this Sentencing Memorandum of Vancito Gumbs is formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1C, and is being electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the all counsel of record in this case.

Date:  10 May 2019.

/s/ Roger C. Wilson
Georgia Bar No. 769040